**STILLWATER COLUMBIA ASSOCIATION, INC.,**
Appellee,

v.

**James SHEPHERD d/b/a Shepherd's Carriage House, Appellant.**

**No. 64208.**

Court of Appeals of Oklahoma, Tulsa Division.

Oct. 7, 1986.

---

**8.** See 12A O.S.1981 §§ 2–102, 2–105 and 2–304.

**9.** 203 Okla. 250, 219 P.2d 992 (1950).

A.J. Schott, Stillwater, for appellee.

Lynn R. Osborn, Stillwater, for appellant.

BRIGHTMIRE, Presiding Judge.

Challenged here is a summary judgment rendered in favor of plaintiff declaring that party wall access easement has been extinguished by abandonment and that a later related license to use the access way is revocable. The attack is based not on the existence of disputed facts but on the ground the material facts are clearly against the weight of the evidence and the judgment is contrary to law.

I

The background facts are these. Back in 1908 Grand Opera House Company owned a building in Stillwater, Oklahoma. The Independent Order of Odd Fellows owned an adjoining lot. The latter wanted to build a two-story building on its lot and anchor onto Opera House's east wall for support. Following a discussion of the matter, the parties entered a written contract which provided for Odd Fellows to tie into the wall in exchange for the Order's building and maintaining a stairway along the west side of its building from the street to Opera House's third floor "so long as said building shall remain."[1] The agreement was fully performed and subject stairway was used by both parties for many years.

Sometime prior to 1958, however, Opera House's third floor access doorway was eliminated and bricked in from the inside of the House and was never again reopened.

In 1958 defendant James Shepherd and a partner bought the Opera House building. Shepherd acquired the partner's interest in 1973 and in 1976 began remodeling the building. To comply with the municipal fire code requiring an emergency exit from the second story of his building, Shepherd requested and received a letter from the

---

1. The contract is about a legal size page and a half long and is handwritten. It recites in material part the need of the lodge to tie into the opera house wall and that opera house is agreeable to this if the lodge will build and maintain a stairway between the street and the opera house's third-floor "parquet." That clause reads as follows:

"The second party [Lodge] in consideration of the above [use of opera house wall] agree that it will build and maintain in their [sic] building a stair and hallway along said east wall on Lot 21 with an entrance to the stairway from the street at the front of said building on the south the same to be of such height and at such distance north from said Street as to make a practical entrance and exit to and from the parquet [third floor used for opera house] in said Opera House Building to the Street ... giving and granting unto first party [Opera House] the free access to said hall and stairway *for the purpose* aforesaid and keeping and maintaining the same so long as said building shall remain." (Emphasis added.)

The agreement went on to describe the rights and duties of each party in the event of damage or destruction of the common wall.

The lodge performed as agreed.

Odd Fellows permitting him to cut a new doorway through the party wall at the second floor level opening into the lodge's stairway—which, incidentally, was still being used by the Odd Fellows' members to reach their second floor meeting hall.

In 1979 the Stillwater Columbia Association began negotiations with the Odd Fellows for the purchase of its building. Representatives of the Association inspected the site, including the stairway, had a title opinion prepared and, shortly after purchasing the property, began remodeling. That portion of the stairway leading to the blocked third-floor doorway was removed to accomodate an elevator. Later remodeling plans called for completely closing the street entrance and Shepherd objected and claimed to have an easement.

On December 21, 1981, the Association filed its petition seeking a judgment declaring that the easement granted for the third-floor doorway had been abandoned and that permission given by the Odd Fellows in 1976 for the second-floor doorway was a revocable license. On July 2, 1982, the trial court granted the Association's motion for summary judgment on the pleadings and Shepherd appealed. The court of appeals reversed and remanded, holding that because material questions of fact remained unsolved summary judgment was inappropriate. On March 21, 1985, the case was tried and the trial court rendered judgment for the Association, concluding that "[t]he laying of bricks implies an intent to abandon by [Shepherd's] predecessors in title [which] coupled with non-user amounts to abandonment of the grant given in the 1908 agreement" and that "[t]he letter of 1976 did not revive the abandoned right [but was] a permissive grant not coupled with expenditure of money on [Association's] property." Shepherd appeals.

## II

Shepherd's first proposition—that the court erred in finding an abandonment of the "easement grants" contained in the 1908 contract—is without merit.

The argument is as follows: (1) in the case of an easement created by written instrument, that non-user alone, however long it may be continued, will not constitute an abandonment of the easement or otherwise bar the grantee or his successors in title from either assuming or resuming the exercise of the right; (2) the important factor is the intention of the dominant owner to abandon the easement; (3) mere inconsistent acts are not sufficient to constitute abandonment; and (4) the Association failed to prove Shepherd's intent to abandon, therefore the court's finding of abandonment was error.

Both parties recognize 60 O.S. 1981 § 59(3) as containing law relevant to this controversy. It reads:

"A servitude is extinguished:

. . . .

3. By the performance of any act upon either tenement, by the owner of the servitude, or with his assent which is incompatible with its nature or exercise."

It is, of course, undisputed that (1) the purpose for creating the servitude in 1908 was to afford Opera House an access between the street and the third floor of Opera House; (2) Shepherd knew this because the contract was on record and his deed referred to it; (3) Shepherd knew the access doorway had been bricked in from the Opera House side by the owner of the servitude before he bought the property; (4) Shepherd knew this act was incompatible with or at least foreclosed the exercise or use of the servitude; and (5) by asking for permission to use the stairway as an emergency exit and receiving written permission to do so on February 20, 1976, Shepherd pursued a course of action inconsistent with the belief that the 1908 easement still existed.

A basic principle of equity recognized since early statehood is that "[a]n easement which is granted for a definite purpose, is exinguished when the purpose, reason, and necessity for which it was granted has ceased." *Griffin v. Dwyer*, 181 Okl. 71, 72 P.2d 349 (1937).

Here, as can be seen in footnote 1, the creating contract recited the purpose for the grant—to provide ingress from the street to the Opera House on the third floor "parquet" of its building. Not only is there no longer an opera facility on the third floor but the owner of the opera house building permanently eliminated access to the stairway by bricking it in.

■ We are of the opinion that the trial court's conclusion of law—that the original easement was abandoned and thereby terminated when same was bricked up—was a correct one to draw from the uncontroverted facts.

### III

We turn next to the other legal conclusion reached by the court—that Odd Fellows' 1976 letter did not revive the easement but merely granted permission to cut the doorway and use the stairway and was revocable at will.

Defendant argues this is an error of law because the 1976 letter "constituted an irrevocable license, or a license coupled with an interest."

The letter upon which defendant relies reads in pertinent part as follows:

"Dear Mr. Shepherd:

Your request for permission to make an emergency exit into our lodge entrance stairwell has been received and acted upon favorably ... by a vote of the lodge ... provided of course that this installation will be made with no expense to the lodge and the lodge property will be protected during and after installation of a suitable fire door."

The argument is that because Shepherd spent around $1,800 to cut through the wall and install a door, he acquired a use interest or easement in the stairway.

■ We do not agree. There is nothing in the letter that suggests the lodge was obligated to keep and maintain the stairway for defendant's benefit. Certainly there was no consideration—not even a benefit—running to the lodge. About all that can be said for the matter is that

defendant said he wanted to cut a fire exit through the wall and the lodge said he could.

The cases dealing with licenses "coupled with an interest" are few and the ones that have granted relief on this basis have done so when to do otherwise would deprive the licensee of a profit a prendre and usually involved facts estopping the grantor from revoking the license. For instance, where one acquires an interest in growing crops, timber, or minerals, the licensor may not revoke the right of entry. *Anchor Stone & Materials Co. v. Carlin*, 436 P.2d 650 (Okl.1968). Or where improvements made by licensee in reliance on the license inure to the benefit of the licensor. *Murduck v. City of Blackwell*, 198 Okl. 171, 176 P.2d 1002 (1946).

We conclude that the trial court did not err in holding the license in question was revocable at will.

The summary judgment appealed is affirmed.

MEANS, J., and STUBBLEFIELD, J., concur.